CALVIN MILLIGAN v. TEXAS & NEW ORLEANS
RAILWAY COMPANY.

Decided January 31, 1902.

1.—Negligence—Carriers—Charge of Court—Degree of Care.

Where in an action by a passenger for personal injuries the issue of contributory negligence was involved, the presence in the charge of a correct definition of ordinary negligence, though not applicable to the duty imposed by law on the defendant, was not such error as was calculated to confuse and mislead the jury, where the court elsewhere gave a proper charge upon the degree of care which a carrier owes to the passenger.

2.—Same—Error of Omission—Request for Charge.

Where the error in the charge is not affirmative, but one of omission merely, which could be obviated by a requested charge, it is the duty of the complaining party to ask for such a charge.

3.—Same—Pleading Necessary.

   Where plaintiff did not plead as a ground of recovery the negligence of the carrier in failing to provide lights at the depot, he can not complain of the exclusion of proof of such failure, or of the charge in instructing that the jury should not consider the absence of such lights in connection with the question of negligence.

   Error from Liberty.   Tried below before Hon. L. B. Hightower.

   *Thompson & Willie,* for plaintiff in error.

   *Baker, Botts, Baker & Lovett* and *Watts, Chester & Ellison,* for defendant in error.

   GILL, ASSOCIATE JUSTICE.—This was an action by plaintiff in error, Calvin Milligan, against defendant in error, the Texas & New Orleans Railroad Company, for damages for personal injuries to himself and wife, alleged to have been caused by the negligence of defendant's agents and employes in charge of one of its passengr trains.   The defendant pleaded general denial and contributory negligence.   A trial before a jury resulted in a verdict and judgment for defendant.

   On September 2, 1900, plaintiff and his wife took passage on one of defendant's passenger trains at the station called Crosby, on defendant's line of road, his destination being the station of Sheldon, also on defendant's line.   Sheldon was not a regular stopping point for defendant's passenger train but was only a flag station.   On the occasion in question the train on which plaintiff and his wife were passengers arrived at Sheldon in the night time, and stopped both for the purpose of taking on other passengers and allowing plaintiff and his wife to alight.   Plaintiff and his wife left the train before it stopped at the station and while it was still moving.   As a consequence plaintiff received some injuries and his wife had both her legs cut off below the knees by the wheels of one of the coaches of the train.   According to the testimony introduced by the defendant, the plaintiff and his wife had taken seats in the smoking car and so remained until the train neared the station of Sheldon.   The porter then announced the station of Sheldon as he passed through and went on his way.   The train stopped at the station without unusual movement or accident.   The conductor, knowing he had two passengers for that point and not seeing them alight, inquired for them, and hearing nothing of them, asked the station agent to look out for them, and the train proceeded on its way.   A few minutes afterwards plaintiff and his wife were found on the ground about 400 feet from the point at the station where the train stopped to allow passengers to alight.   This distance from the station is not disputed, and plaintiff admits that where he was found is where he left the train, or fell from it, as he did not move after he fell.

   The allegation of negligence against defendant was that when the train approached the station the porter announced the station, opened

the door of the car in which plaintiffs were seated, and told plaintiff and his wife to get off the train. That plaintiffs, in obedience to this invitation or command, came out of the car onto the platform thereof, for the purpose of getting off the train, but as they were on the steps of the train and just before they attempted to alight, the train started up with a sudden jerk and threw plaintiff and his wife off, whereby they were both injured.

They testified in support of these allegations, stating that they had not yet attempted to alight, but were standing on the steps and were thrown from the train by a sudden and violent jerk. As before stated, the defendant's witnesses testified that there was no sudden or violent jerk and that nothing unusual occurred in connection with the stopping of the train. To this should be added the declaration of plaintiff's wife when she was first found on the ground, to the effect that her husband told her to follow, left the train, and she followed him.

Under this state of the evidence the trial court submitted to the jury the issues of negligence on the part of the defendant and of contributory negligence on the part of plaintiff and his wife.

Plaintiff by the first assignment of error assails the court's definition of negligence. It was defined by the court to be "the failure to exercise that degree of care which persons of ordinary prudence would use under the same or similar circumstances." This is an approved definition of the term, and citation of authority is unnecessary in support of its correctness. The definition is assailed mainly on the ground that a definition of ordinary negligence has no proper place in the charge of the court in a case of this sort, and that its presence misled and confused the jury. This contention is based upon the idea that the use of the word negligence in a subsequent portion of the charge relating to the duty of the defendant to its passengers, as applied to the facts of this case, led the jury to believe that no higher degree of care was required of the company than ordinary care.

The facts presented the issue of contributory negligence and required the submission of that issue to the jury. This could not well be done without correctly defining contributory negligence, and this involved a definition of negligence itself. The presence of the definition is thus justified, though not applicable to the duty imposed by law upon the defendant. With reference to this duty the court charged as follows: "You are charged that railroad companies engaged in the transportation of persons are held to that high degree of care which very prudent persons would use under the same or similar circumstances, but are not insurers of the absolute safety of their passengers." The jury was thus plainly instructed that a different degree of care devolved on defendant. In a subsequent portion of the charge, in submitting the issue of defendant's negligence, the court used this language: "And if you further believe such acts on the part of defendant's servants constituted negligence," etc.

Plaintiff contends that the use of the word "negligence" in this connection necessarily referred the jury to the court's definition of negligence in the former part of the charge as the measure of the defendant's duty, and were thus induced to hold it to no more than the exercise of ordinary care. It is true the court in prescribing the duty of the company failed to add, "and a failure in this respect would be negligence on the part of the company," but having plainly prescribed the duty of the defendant as distinct and different from that of plaintiff and his wife, we are not inclined to believe the jury were misled. It was not affirmative error and the danger could have been obviated by a requested charge, and none was asked upon the point. The assignment can not be sustained.

Plaintiff also complains of the language of the court in prescribing the duty owed by the company to passengers, but we think the complaint without merit.

Plaintiff further contends that the court assumed as an established fact that he and his wife were in the act of alighting from the moving train when they fell, and that the court erred in so doing. The part of the charge complained of is not susceptible of the construction sought to be placed upon it by plaintiff. It is clear to our minds that the question was left for the determination of the jury.

Plaintiff also complains of the refusal of the trial court to allow him to prove that the defendant had failed to provide lights outside of the depot at the station of Sheldon, and of a charge that the jury should not consider the absence of such lights in connection with the question of negligence. The failure to provide lights outside the depot was not pleaded as a ground of liability, and the court did not err in the respect complained of.

We do not deem it necessary to notice the other assignments. They are in effect disposed of in the discussion of those already noticed.

The evidence is ample to support the judgment for defendant, and no reversible error being made to appear, it is affirmed.

*Affirmed.*